ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

ANDREW W. INGERSOLL
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
andrew.ingersoll@usdoj.gov
Telephone: (202) 514-1999

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA, and the JEFFERSON COUNTY BOARD OF HEALTH, <br><br> Plaintiffs, <br><br> v. <br><br> DRUMMOND COMPANY, INC. d/b/a ABC COKE <br><br> Defendant. | Civil Action No. <br><br> COMPLAINT FOR CIVIL PENALTIES AND INJUNCTIVE RELIEF |

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the Jefferson County Board of Health ("JCBH") through its undersigned attorneys, file this complaint and allege as follows:

## I. NATURE OF THE ACTION

1. This is a civil action for civil penalties and injunctive relief under Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b), against Defendant Drummond Company, Inc. d/b/a ABC Coke ("Drummond") with respect to violations of requirements of the CAA at the coke by-product recovery plant at its coke production facility in Tarrant, Alabama (the "Facility").

## II. JURISDICTION, AUTHORITY AND VENUE

2. This Court has jurisdiction over the subject matter of this action and over the parties pursuant to 28 U.S.C. §§ 1331, 1345, 1355 and 1367; and Section 113(b) of the CAA, 42 U.S.C. § 7413(b). The Court has personal jurisdiction over the parties to this action.

3. Authority to bring this action is vested in the United States Department of Justice by 28 U.S.C. §§ 516 and 519; and Sections 113(b) and 305 of the CAA, 42 U.S.C. §§7413(b) and 7605. Authority to bring this action is also vested in Section 304(a) of the CAA and §§ 22-3-1 through 12 and §§ 22-28-1 through 23 of the Code of Alabama.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395, and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), because the events giving rise to the claims alleged herein occurred in this District and Defendant Drummond does business and has its principal place of business in this District.

## III. NOTICE

5. The United States has provided notice of the commencement of this action to the State

of Alabama as required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## IV. DEFENDANT

6.  Drummond was incorporated in the State of Alabama in 1935 and its principal place of business is in the State of Alabama.

7.  Drummond owns and operates a coke by-product recovery plant at 900 Huntsville Avenue, Tarrant, Alabama.

8.  At all times relevant to this action Drummond has owned and operated the Facility.

9.  Drummond is a "person" within the meaning of Sections 302(e) of the CAA, 42 U.S.C. § 7602(e), and applicable federal and state regulations promulgated pursuant to this statute.

## V. STATUTORY AND REGULATORY BACKGROUND OF THE CLEAN AIR ACT

10. The CAA, 42 U.S.C. §§ 7401–7671q, establishes a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

11. Section 112(b)(1) of the CAA, 42 U.S.C. § 7412(b)(1), sets forth a list of hazardous air pollutants ("HAP"). Section 112(b)(2) of the CAA requires the Administrator of the EPA (the "Administrator") periodically to review and revise the list set forth in Section 112(b)(1) and, where appropriate, add pollutants that present or may present a threat of adverse human health or environmental effects. The Administrator designated benzene as a HAP under the CAA. 42 U.S.C. § 7412 (b), 42 Fed. Reg. 29332 (June 8, 1977).

12. Section 112(c) of the CAA, 42 U.S.C. § 7412(c), requires EPA to publish a list of categories and subcategories of major and area sources of listed HAPs. Section 112(d) of the CAA requires EPA to promulgate emission standards for each category or subcategory of major and area sources of listed HAPs, and requires the maximum degree of reduction in emissions of

HAPs from all new or existing sources. These emissions standards are called National Emissions Standards for Hazardous Air Pollutants ("NESHAP"), and are found at 40 C.F.R. Part 61 and 63.

13.     Title V of the CAA, 42 U.S.C. §§ 7661-7661e, establishes an operating permitting program designed to include all applicable requirements of the CAA in a single permit, and to provide for permitting for sources of HAPs. Section 502 of the CAA, 42 U.S.C. § 7661a, requires states or local permitting authorities to submit an approvable Title V permitting program before November 15, 1993. Pursuant to Section 502, the Administrator has promulgated regulations at 40 C.F.R. Part 70 setting forth the minimum requirements for an approvable Title V program. 57 Fed. Reg. 32295 (July 21, 1992). JCBH received approval of its Title V program on November 28, 2001, 66 Fed. Reg. 54,444 (October 29, 2001).

14.     Section 113 of the CAA authorizes EPA to commence a civil action for injunctive relief and civil penalties against any person who has violated any requirement or prohibition of the Act or regulations promulgated thereunder or who has violated an applicable permit or implementation plan.

15.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes injunctive relief and civil penalties of up to $25,000 per day for each violation of the CAA or regulation promulgated or permit issued thereunder. This statutory maximum civil penalty has been increased to reflect inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act (28 U.S.C. § 2461), as amended, to $37,500 per day for each violation occurring after January 12, 2009, through November 2, 2015, and up to $97,229 per day per violation for each violation occurring after November 2, 2015, and assessed after January 15, 2018. See 73 Fed. Reg. 75,340-46 (Dec. 11, 2008); 78 Fed. Reg. 66,643-48 (Nov. 6, 2013); 81 Fed. Reg. 43,095 (July 1, 2016); 82 Fed. Reg. 3633 (Jan. 12, 2017); 83 Fed. Reg. 1193 (Jan. 10, 2018), all codified at 40 C.F.R. Part 19.

16. Section 304(a) of the CAA authorizes any person (including a state agency, such as JCBH) to "commence a civil action on his own behalf . . . against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."

17. JCBH is authorized to institute a civil action pursuant to §§ 22-28-23 and 22-22A-5 of the Code of Alabama and the provisions of the Jefferson County Board of Health Air Pollution Control Rules and Regulations.

### *NESHAP for Benzene Emissions from Coke By-Product Recovery Plants – 40 C.F.R. Part 61, Subpart L*

18. Pursuant to authority granted to the Administrator by Sections 112 and 114 of the CAA, 42 U.SC. §§ 7412, 7414, EPA promulgated 40 C.F.R. Part 61, Subpart L, §§ 61.130 through 61.139, which established the NESHAP for Benzene Emissions from Coke By-Product Recovery Plants. 54 Fed. Reg. 38,073 (September 14, 1989). Pursuant to authority granted by §§ 22-28-23 and 22-22A-5 of the Code of Alabama, JCBH incorporated Subpart L into the Jefferson County Board of Health Air Pollution Control Rules and Regulations (the "JCBH Regulations") at § 14.2.11 of the JCBH Regulations.

19. Pursuant to 40 C.F.R. §§ 61.130(a) & (b), Subpart L applies to specific sources at furnace and foundry coke by-product recovery plants, including tar decanters, tar storage tanks, tar intercepting sumps, flushing-liquor circulation tanks, light oil sumps, light oil condensers, light oil decanters, wash oil decanters, wash-oil circulation tanks, naphthalene processing, final coolers, final cooler cooling towers, benzene storage tanks, BTX storage tanks, light-oil storage tanks and excess ammonia-liquor storage tanks, and to equipment that is intended to operate in benzene service, including pumps, valves, exhausters, pressure relief devices, sampling connection systems, open-ended valves or lines, flanges or other connectors, and control devices

- 4 -

or systems required by 40 C.F.R. § 61.135.

20.     40 C.F.R. § 61.131 defines "coke by-product recovery plant" as "any plant designed and operated for the separation and recovery of coal tar derivatives (by-products) evolved from coal during the coking process of a coke oven battery."

21.     40 C.F.R. § 61.131 defines "in benzene service" as "a piece of equipment, other than an exhauster, that either contains or contacts a fluid (liquid or gas) that is at least 10 percent benzene by weight or any exhauster that either contains or contacts a fluid (liquid or gas) at least 1 percent benzene by weight as determined by the provisions of §61.137(b)."

22.     40 C.F.R. § 61.132(a)(1) requires owners or operators of furnace or foundry coke by-product recovery plants to enclose and seal all openings on each process vessel, tar storage tank, and tar-intercepting sump.

23.     40 C.F.R. § 61.132(a)(2) requires owners or operators of furnace or foundry coke by-product recovery plants to duct gasses from each process vessel, tar storage tank, and tar intercepting sump to the gas collection system, gas distribution system, or other enclosed point in the by-product recovery process where the benzene in gas will be recovered or destroyed. This system shall be designed and operated for no detectable emissions, as indicated by an instrument reading of less than 500 ppm above background and visual inspections.

24.     Under 40 C.F.R. § 61.132(b), following the installation of any control equipment to come into compliance with 40 C.F.R. § 61.132(a), owners or operators must monitor connections and seals on each control system to determine if it is operating with no detectible emissions, using Method 21, and procedures specified in 40 C.F.R. § 61.245(c), and shall visually inspect each source (including sealing materials) and the ductwork of the control system for evidence of visible defects such as gaps or tears.

25.     Under C.F.R. § 61.132(b)(3)-(4), if a leak is detected, a repair must be attempted

within five days of detection and the repair must be made no later than fifteen calendar days after first detected.

26. 40 C.F.R. § 61.133(c) requires owners and operators to monitor the connections and seals on each control system for each light oil sump to determine if they are operating with no detectable emissions.

27. 40 C.F.R. § 61.135(c) requires owners and operators to mark all equipment in benzene service subject to the provisions of Subpart L in such a manner that it can be distinguished readily from other pieces of equipment in benzene service.

### *NESHAP for Equipment Leaks (Fugitive Emission Sources) –40 C.F.R Part, 61, Subpart V*

28. Pursuant to Sections 112 and 114 of the CAA, EPA promulgated 40 C.F.R. Part 61, Subpart V, §§ 61.240 through 61.247 which established the NESHAP for equipment leaks and fugitive emission sources. 49 Fed. Reg. 23,513 (June 6, 1984). Pursuant to authority granted by §§ 22-28-23 and 22-22A-5 of the Code of Alabama, JCBH incorporated Subpart V into the JCBH Regulations at § 14.2.21 of the JCBH Regulations.

29. 40 C.F.R. § 61.135(a) provides that each owner or operator of equipment in benzene service shall comply with the requirements of 40 C.F.R. 61, Subpart V, except as otherwise provided.

30. Pursuant to 40 C.F.R. § 61.240, Subpart V applies to each of the following sources that are intended to operate in volatile hazardous air pollutant ("VHAP") service: pumps, compressors, pressure relief devices, sampling connection systems, open-ended valves or lines, valves, connectors, surge control vessels, bottoms receivers, and control devices or systems required by this subpart. Under 40 C.F.R. § 61.242-1, owners and operators subject to Subpart V shall demonstrate compliance with the requirements set forth in 40 C.F.R. §§ 61.242-1 through 61.242-11 pertaining to equipping the various sources with seals, caps, plugs, vents and other

devices to reduce and/or eliminate leaks, to test and monitor those sources for leaks, and to timely repair any leaks exceeding acceptable thresholds.

31. 40 C.F.R. § 61.242-1(d) requires each piece of equipment subject to Subpart V be marked to permit distinguishing it from other non-Subpart V equipment.

32. 40 C.F.R. § 61.242-6(a)(1) requires each open-ended valve or line to be equipped with a cap, blind flange, plug, or second valve.

33. 40 C.F.R. § 61.242-2(a)(1) requires each pump to be monitored monthly to detect leaks according to Method 21. 40 C.F.R. § 61.242-2(a)(2) requires each pump to be visually inspected each calendar week for indications of liquids dripping from the seal.

34. 40 C.F.R. § 61.242-4(a) requires that pressure relief devices be operated with no detectable emissions.

35. 40 C.F.R. § 61.242-7(h)(3) requires valves designated as difficult to monitor, be monitored at least once per year. 40 C.F.R. § 61.245(b)(1) requires owners and operators to comply with Method 21 when testing equipment for leaks. 40 C.F.R Part 60, Appendix A, Method 21.

36. 40 C.F.R. § 61.245(b)(1) requires that monitoring required by Subpart V comply with Method 21 of Appendix A of 40 C.F.R. Part 60, including through correct placement of the probe of the monitoring equipment and correct measurement of background readings of ambient VOC concentrations.

37. 40 C.F.R § 61.246(b)(1) provides that when a leak is detected, "a weatherproof and readily visible identification, marked with the equipment identification number, shall be attached to the leaking equipment."

38. 40 C.F.R. § 61.246(e)(1) requires an operator to keep a list of all components subject to regulation under this subpart.

### *NESHAP For Benzene Waste Operations – 40 C.F.R. Part 61, Subpart FF*

39. Pursuant to Sections 112 and 114 of the CAA, 42 U.S.C. §§ 7412, 7414, EPA promulgated 40 C.F.R. Part 61, Subpart FF, §§ 61.340 through 61.359, which established the NESHAP for benzene waste operations, 55 Fed. Reg. 8,346 (March 7, 1990). Pursuant to authority granted by §§ 22-28-23 and 22-22A-5 of the Code of Alabama, JCBH incorporated Subpart FF into the JCBH Regulations at § 14.2.31 of the JCBH Regulations.

40. 40 C.F.R. § 61.340(a) provides that Subpart FF applies to owners or operators of coke by-product recovery plants, among other sources.

41. 40 C.F.R. § 61.355(a) requires owners or operators of a coke by-product recovery plant to determine the total annual benzene ("TAB") quantity from facility waste. To calculate the TAB quantity, owners and operators must calculate the annual benzene quantity by multiplying the annual waste quantity for each waste stream by the flow-weighted annual average benzene concentration for each waste stream. The annual benzene quantity for each waste stream generated for the year must then be added to the annual benzene quantity for each process unit turnaround waste annualized, to get the TAB quantity.

42. 40 C.F.R. § 61.355(b) provides that, for purposes of calculating the TAB, owners or operators must determine the annual waste quantity at the point of waste generation, by one of the methods enumerated in 40 C.F.R. §§ 61.355(b)(5) though (7), unless otherwise provided.

43. 40 C.F.R. § 61.355(b)(2) provides that, for purposes of calculating the TAB, to permit calculation at the exit of the ammonia still, the transfer of wastes to the still must be through hard piping, or other enclosed system, and the ammonia still must meet the definition of a sour water stripper found in 40 C.F.R. § 61.341.

44. 40 C.F.R. § 61.355(a)(3) provides that if the TAB quantity from facility waste is greater than 10 megagrams ("Mg") per year (11 tons/yr) then the owner or operator shall comply

- 8 -

with the requirements of 40 C.F.R. § 61.342(c) – (e).

45.     40 C.F.R. § 61.355(a)(4) provides that if the TAB quantity from facility waste is less than 10 Mg/yr (11 tons/yr) but is equal to or greater than 1 Mg/yr (1.1 tons/yr) then the owner or operator shall comply with the recordkeeping requirements of § 61.356 and reporting requirements of § 61.357 of Subpart FF and shall repeat the determination of TAB at least once per year and whenever there is a change that will impact the TAB.

46.     40 C.F.R. § 61.355(a)(5) provides that if the TAB quantity from facility waste is less than 1 Mg/yr (1.1 tons/yr) then the owner or operator shall comply with the recordkeeping requirements of 40 C.F.R. § 61.356 and reporting requirements of 40 C.F.R. § 61.357 of Subpart FF and shall repeat the determination of TAB whenever there is a change that will impact the TAB.

47.     40 C.F.R. § 61.357(a)(2) requires that the owner or operator include in his or her report a table identifying each waste stream.

48.     40 C.F.R. § 61.346(a)(1) requires that on each drain system in which waste is placed, the owner or operator shall install, operate, and maintain on each drain system opening a cover and closed-vent system that routes all organic vapors vented from the drain system to a control device.

49.     40 C.F.R. § 61.347(a)(1) requires that on each oil water separator in which waste is placed, the owner or operator shall install, operate, and maintain a fixed roof and closed-vent system that routes all organic vapors vented from the oil-water separator to a control device.

### *Title V Permit*

50.     Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), provides that after the effective date of any permit program approved or promulgated pursuant to Title V of the CAA, it shall be unlawful for any person to violate any requirement of a permit issued under Title V of the CAA,

or to operate a source except in compliance with a permit issued by a permitting authority under Title V of the CAA.

51. Section 503(a) of the CAA, 42 U.S.C. § 7661b, provides that any source specified in Section 502(a) of the CAA shall become subject to a permit program and shall be required to have a permit to operate by the relevant date.  Section 503(b)(2) of the CAA provides that the regulations promulgated pursuant to Section 502(b) shall include requirements that the permittee periodically, but no less frequently than annually, certify that the facility is in compliance with any applicable requirements of the Title V permit, and promptly report any deviations from permit requirements to the permitting authority.

52. In accordance with Section 502(d)(1) of the CAA, 42 U.S.C. §7661a(d)(1), the JCBH proposed Title V Operating Permit Program rules (Jefferson County Board of Health Air Pollution Control Rules and Regulations, Chapter 18) to meet the requirements of Title V of the CAA and 40 C.F.R. Part 70.  EPA granted interim approval of the JCBH Title V Operating Permit Program on December 15, 1995, 60 Fed. Reg. 57,352 (Nov. 15, 1995), and granted full approval of the program on November 28, 2001, 66 Fed. Reg. 54,444 (October 29, 2001).

53. On December 15, 1995, Drummond submitted a Title V Permit application, which was approved by JCBH.  Drummond has renewed its permit continually since then, with a current permit, Number 4-07-0001-03, set to expire August 10, 2019.

54. Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes EPA to bring a civil action if the Administrator finds that any person is in violation of, *inter alia*, any requirement or prohibition of an applicable implementation plan or permit issued under the CAA.

55. Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the District Court to enjoin a violation, to require compliance, to assess a civil penalty for each violation, and to award any other appropriate relief.

**GENERAL ALLEGATIONS**

56. At all times pertinent to this action, Drummond has been and continues to be the owner and operator of the Facility.

57. The Facility, which includes a coke by-product recovery plant associated with two coke batteries consisting of a total of 132 coke ovens, operates twenty-four hours per day, seven days per week, 365 days per year.

58. The Facility produces coke through a destructive distillation process in which coal is heated in ovens in an oxygen-deficient atmosphere. The volatile materials in the heated coal are removed from the ovens as coke oven gas ("COG"). COG is processed to remove desired by-products and waste materials and then the gas is combusted in boilers to produce steam for the facility and in the coke ovens to heat the coal.

59. The Facility is within the "Coke By-Product Plants" category of Major Sources of HAPs, as defined by 42 U.S.C. § 7412(a)(1), and as promulgated by the Administrator pursuant to 42 U.S.C. § 7412(c)(1). 57 F.R. 31576 (July 16, 1992) ("Initial List of Categories of Sources Under Section 112(c)(1) of the Clean Air Act Amendments of 1990").

60. The Facility is a coke by-product recovery plant as defined in 40 C.F.R. § 61.131, and includes sources subject to Subparts V and L.

61. For purposes of NESHAP Subpart L, the Facility is a Foundry coke by-product recovery plant. 40 C.F.R. § 61.131.

62. The Facility is a coke by-product recovery plant as defined in NESHAP Subpart FF, 40 C.F.R. § 61.341.

63. The Facility had a total annual benzene quantity from waste equal to or greater than 10 megagrams per year because, among other waste streams, the aqueous overflow from the BTX decanter going into the naphthalene sump, and flow from the light oil pad condensate to a dirty

water sump, were required to be included in calculation of the TAB.

64. From May 4 to May 10, 2011, again on May 21, 2014, and finally on August 14-17, 2018, the EPA's National Enforcement Investigation Center ("NEIC") and/or EPA Region 4, and JCBH inspected the Facility to determine compliance with the CAA.

65. On January 10, 2012, the EPA issued a Request For Information ("RFI") to Drummond pursuant to authority granted by Section 114 of the CAA, 42 U.S.C. § 7414. After a series of extensions, Drummond submitted responses to EPA's RFI between March 8, 2012 and June 19, 2012. The information submitted in Drummond's RFI responses revealed evidence of a number of violations of the CAA and the NESHAP regulations.

## VI. **CLAIMS FOR RELIEF**

66. Paragraphs 1 through 65 are realleged and incorporated herein by reference.

### FIRST CLAIM FOR RELIEF
(NESHAP Subpart L for Benzene Emissions from Coke By-Product Recovery)

67. Until sometime after the May 2011 inspection of the facility, Drummond failed to enclose and seal all openings on two tar decanters and one light oil decanter (a/k/a BTX Tank) in violation of 40 C.F.R. § 61.132(a)(1).

68. On numerous occasions between February 2007 and August 2009, Drummond failed to adequately operate its benzene recovery/destruction control system for no detectable emissions in violation of 40 C.F.R. § 61.132(a)(2).

69. From at least January 2007 through June 2013, Drummond failed to adequately monitor and visually inspect the connections and seals on each benzene control system required by 40 C.F.R. § 61.132(a), in violation of 40 C.F.R. § 61.132(b).

70. On numerous occasions between January 2007 and August 2010, and for equipment subject to Subpart L, Drummond failed to make a first attempt at leak repair within five days of

the discovery of a leak, nor did it repair those leaks within 15 calendar days of their being detected, in violation of 40 C.F.R. § 61.132(b)(3) and 40 C.F.R. § 61.132(b)(4).

71. From 2007 through June 2013, Drummond failed to monitor and visually inspect the connections and seals on process equipment control systems in violation of 40 C.F.R. § 61.133(c).

72. Until at least May 2011, Drummond failed to mark certain equipment in benzene service subject to the requirements of NESHAP Subpart L, in violation of 40 C.F.R. § 61.135(c).

73. Until at least February 2012, Drummond failed to keep in a readily accessible location detailed schematics, design specifications, and piping and instrumentation diagrams, in violation of 40 C.F.R. §61.138(a)(1).

74. As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Drummond is liable for the assessment of a civil penalty of up to the statutory maximum amounts set forth in Paragraph 15 above per day for each violation.  Pursuant to § 1.14.1 of the JCBH Regulations, Drummond is liable for a civil penalty of up to $25,000 per day for each violation of the JCBH Regulations.

SECOND CLAIM FOR RELIEF
(NESHAP Subpart V for Equipment Leaks)

75. Until at least May 2011, Drummond failed to equip numerous open-ended valves with a cap, blind flange, plug, or second valve in violation of 40 C.F.R. § 61.242-6(a)(1).

76. Until at least May 2011, certain valves and pressure relief devices had no tags or markings that made them readily distinguishable from other pieces of equipment, in violation of 40 C.F.R. § 61.242-1(d).

77. On at least three occasions between February 2007 and March 2008, Drummond failed to operate pressure relief devices at the Facility in gas/vapor service with no detectible emissions

in violation of 40 C.F.R. § 61.242-4(a).

78.     In 2008, Drummond failed to monitor numerous valves identified as difficult to monitor, once per year, in violation of 40 C.F.R. § 61.242-7(h)(3).

79.     In 2011, Drummond failed to monitor numerous valves identified as difficult to monitor, once per year, in violation of 40 C.F.R. § 61.242-7(h)(3).

80.     From at least 2007 to 2011, Drummond failed to attach weatherproof and readily visible identifications to mark leaking equipment, including leaks identified by NEIC inspectors in May 2011, in violation of 40 C.F.R. § 61.246(b)(1).

81.     At various times from 2007 to 2011, Drummond failed to maintain an accurate list of equipment at the facility subject to Subpart V, in violation of 40 C.F.R. § 61.246(e)(1).

82.     On numerous occasions from 2007 to 2011, Drummond failed to re-monitor for two successive months valves reported as leaking, in violation of 40 C.F.R. § 61.242-7(c)(2).

83.     From 2007 through May 2014, Drummond has failed to follow the work practice standards of Method 21 when testing for leaks, in violation of 40 C.F.R. § 61.245(b)(1).

84.     As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Drummond is liable for the assessment of a civil penalty of up to the statutory maximum amounts set forth in Paragraph 15 above per day for each violation.  Pursuant to § 1.14.1 of the JCBH Regulations, Drummond is liable for a civil penalty of up to $25,000 per day for each violation of the JCBH Regulations.

## THIRD CLAIM FOR RELIEF
(NESHAP Subpart FF for Benzene Waste Operations)

85.     At all relevant times, Drummond has failed to accurately determine the annual waste quantity at the point of generation of each waste stream using one of the methods designated in 40 C.F.R. § 61.355(b)(5), in violation of 40 C.F.R. § 61.355(b).

86. At all relevant times, Drummond has failed to report all of its benzene waste streams in its TAB reports, in violation of 40 CFR § 61.355(a).

87. At all relevant times, Drummond has failed to submit TAB reports that included all of the information required under 40 C.F.R. § 61.357(a)(1) through (3).

88. From at least May 2011 to June 2011, Drummond failed to hard pipe or otherwise enclose all waste streams, in violation of 40 C.F.R. § 61.355(b)(2)(i).

89. From at least May 2011 until May 2014, Drummond has used an ammonia still that does not meet the definition of a sour water stripper in 40 C.F.R. § 61.341.

90. Since at least May 2011, Drummond has failed to enclose all openings of certain individual drain systems, in violation of 40 C.F.R. § 61.346(a)(1).

91. Since at least May 2011, Drummond has failed to correctly operate and monitor certain individual drain systems, in violation of 40 C.F.R. § 61.346(a)(2).

92. From at least May 2011 until May 2014, Drummond has failed to enclose all openings of each oil-water separator in which waste is placed, in violation of 40 C.F.R. § 61.347(a)(1).

93. Since at least May 2011, Drummond has failed to correctly operate and monitor each oil-water separator in which waste is placed, in violation of 40 C.F.R. § 61.347(a)(2).

94. Unless restrained by an Order of the Court, certain of these violations of the Clean Air Act and its implementing regulations will continue.

95. As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Drummond is liable for injunctive relief and the assessment of a civil penalty of up to the statutory maximum amounts set forth in Paragraph 15 above per day for each violation. Pursuant to § 1.14.1 of the JCBH Regulations, Drummond is liable for a civil penalty of up to $25,000 per day for each violation of the JCBH Regulations.

## FOURTH CLAIM FOR RELIEF
(Title V Permit)

96. Drummond's Title V Permit requires it to comply with 40 C.F.R. Part 61, Subparts L, V, and FF.  As alleged above, Drummond failed to comply with these Subparts.  Each such violation constitutes a separate violation of its Title V permit and a violation of Section 502(a) of the Act, 42 U.S.C. § 7661a(a).

97. Drummond has continuously violated its Title V Permit conditions for Emissions Unit 005 (Coke by-Products Plant), by failing to annually submit to JCDH information required to support a compliance determination with Subpart FF.

98. Unless restrained by an Order of the Court, these violations of the Clean Air Act and its implementing regulations will continue.

99. As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Drummond is liable for injunctive relief and the assessment of a civil penalty of up to the statutory maximum amounts set forth in Paragraph 15 above per day for each violation.  Pursuant to § 1.14.1 of the JCBH Regulations, Drummond is liable for a civil penalty of up to $25,000 per day for each violation of the JCBH Regulations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, the United States of America and JCBH, respectfully request that this Court grant the following relief:

1. Permanently enjoin Drummond from further violations of the CAA and, where applicable, its implementing permits and regulations.

2. Order Drummond to promptly take all steps necessary or appropriate to comply with the foregoing laws, regulations and permits.

3. Assess civil penalties against Drummond for up to the amounts provided in the CAA

for each day of violation;

4. Award JCBH civil penalties for each violation of the Jefferson County Board of Health Air Pollution Control Rules and Regulations, in an amount not to exceed $25,000 per day for each violation; and,

5. Award such other relief as this Court may deem just and proper.

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section

_____
ANDREW W. INGERSOLL (Ca. Bar No. 221348)
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Washington, DC  20044
Telephone: (202) 514-1999
Fax: (202) 514-0097
Email: andrew.ingersoll@usdoj.gov

Counsel for Plaintiff United States of America

OF COUNSEL:
ROBERT W. CAPLAN
Senior Counsel
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street
Atlanta, Georgia, 30338
(404) 562-9520 (telephone)
caplan.robert@epa.gov

_/s/ Wade M_____
DAVID S. MAXEY   (Ala. Bar No. ASB-5361-X83D)
WADE C. MERRITT (Ala. Bar No. ASB-9485-A49M)
Attorneys for the Jefferson County Board of Health

OF COUNSEL:

SPAIN & GILLON, LLC
505 20th Street North
Suite 1200
Birmingham, AL 35203
(205) 328-4100
DMaxey@Spain-Gillon.com
WMerritt@Spain-Gillon.com