FILED

2020 Sep-01  PM 12:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA, and the JEFFERSON COUNTY BOARD OF HEALTH,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 2:19-cv-00240-AKK** |
| **v.** | ) ) | |
| **DRUMMOND COMPANY, INC., d/b/a ABC COKE,** | ) ) ) | |
| **Defendant.** | ) ) | |

## COMPLAINT IN INTERVENTION

Gasp files this Complaint in Intervention pursuant to the citizen suit provision of the Clean Air Act ("CAA"), codified at 42 U.S.C. § 7604(b)(1)(B), intervening in an action brought by the Environmental Protection Agency ("EPA") and the Jefferson County Board of Health ("JCDH," for "Jefferson County Department of Health"), based on Drummond Company's ongoing and continuous violations of the Clean Air Act at Drummond's ABC Coke by-product recovery plant, located in Tarrant, Alabama.

## JURISDICTION

1.    This Court has jurisdiction over this case pursuant to 42 U.S.C. § 7604(b)(1)(B), which allows any person to intervene in an action brought by EPA

for violations of emissions standards or limitations. The Court also has jurisdiction over this case pursuant to the federal question statute, because this CAA case is "a civil action[] arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

## VENUE

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395, and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), because the events giving rise to the claims alleged herein occurred in this District and Defendant Drummond Company, Inc. ("Drummond") does business and has its principal place of business in this District.

## PARTIES

3.      Gasp is a health advocacy nonprofit organization focused on air quality issues in the Greater Birmingham Area. Gasp actively supports effective implementation of the Clean Air Act. Gasp is a membership organization with over 700 members. Gasp's mission is to advance healthy air and environmental justice in the greater-Birmingham area through education, advocacy, and collaboration. Gasp has been actively involved in addressing community concerns involving air quality and environmental justice in the Northern Birmingham, Tarrant, and Inglenook communities. Gasp is a "person" entitled to CAA intervention as of right pursuant to [42 U.S.C. § 7602(e)].

2

4.     At least 65 members of Gasp live or own property near the ABC Coke Plant. They have a direct and beneficial interest in the protection, preservation, and enhancement of the environmental, aesthetic, and recreational values of the air surrounding the plant.

5.     The quality of the air around the Plant directly affects the recreational, aesthetic, and environmental interests of certain members of Gasp and these interests have been and are being, and will be adversely affected by Drummond's plant.

6.     The violations have affected the air where these members live and travel.

7.     The Environmental Protection Agency ("EPA") is a federal executive agency charged with enforcing the CAA.

8.     JCBH is a state agency charged with issuing permits to Drummond for the ABC coke plant and enforcing the CAA.

9.     Drummond is an Alabama corporation with a principal place of business in Alabama, and Drummond owns and operates the ABC Coke plant in Tarrant, Alabama. Drummond is a "person" capable of being sued pursuant to 42 U.S.C. § 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

10.    The Clean Air Act requires the EPA to regulate emissions of air pollutants that are hazardous to human health or the environment, called hazardous air pollutants (HAPs).

11.    Section 304(a) of the CAA authorizes any person to "commence a civil action on his own behalf … against any person … who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."

12.    Section 304(b) of the CAA provides that "No action may be commenced under subsection (a)(1)(A) of this section ... if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right." 42 U.S.C. § 7604(b)(1)(B).

13.    Section 112(b)(1) of the CAA, 42 U.S.C. § 7412(b)(1), sets forth a list of hazardous air pollutants ("HAP"). The Administrator designated benzene as a HAP under the CAA. 42 U.S.C. § 7412 (b), 42 Fed. Reg. 29332 (June 8, 1977). Benzene is a known human carcinogen.

4

14.     Section 112(c) of the CAA, 42 U.S.C. § 7412(c), requires EPA to publish a list of categories and subcategories of major and area sources of listed HAPs. Section 112(d) of the CAA requires EPA to promulgate emission standards for each category or subcategory of major and area sources of listed HAPs, and requires the maximum degree of reduction in emissions of HAPs from all new or existing sources. These emissions standards are called National Emissions Standards for Hazardous Air Pollutants ("NESHAP"), and are found at 40 C.F.R. Part 61 and 63.

15.     Title V of the CAA, 42 U.S.C. §§ 7661-7661e, establishes an operating permitting program designed to include all applicable requirements of the CAA in a single permit, and to provide for permitting for sources of HAPs. Section 502 of the CAA, 42 U.S.C. § 7661a, requires states or local permitting authorities to submit an approvable Title V permitting program before November 15, 1993.

16.     JCBH received approval of its Title V program on November 28, 2001. 66 Fed. Reg. 54,444 (October 29, 2001).

17.     Section 113 of the CAA authorizes EPA to commence a civil action for injunctive relief and civil penalties against any person who has violated any requirement or prohibition of the Act or regulations promulgated thereunder or who has violated an applicable permit or implementation plan.

5

18.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes injunctive relief and civil penalties of up to $25,000 per day for each violation of the CAA or regulation promulgated or permit issued thereunder. This statutory maximum civil penalty has been increased to reflect inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act (28 U.S.C. § 2461), as amended, to $37,500 per day for each violation occurring after January 12, 2009, through November 2, 2015, and up to $99,681 per day per violation for each violation occurring after November 2, 2015, and assessed after February 6, 2019. 73 Fed. Reg. 75,340-46 (Dec. 11, 2008); 78 Fed. Reg. 66,643-48 (Nov. 6, 2013); 81 Fed. Reg. 43,095 (July 1, 2016); 82 Fed. Reg. 3633 (Jan. 12, 2017); 83 Fed. Reg. 1193 (Jan. 10, 2018); 84 Fed. Reg. 20556-60 (Feb. 6, 2019), all codified at 40 C.F.R. Part 19.

### I.     NESHAP for Benzene Emissions from Coke By-Product Recovery Plants – 40 C.F.R. Part 61, Subpart L

19.     Pursuant to authority granted to the Administrator by Sections 112 and 114 of the CAA, 42 U.SC. §§ 7412, 7414, EPA promulgated 40 C.F.R. Part 61, Subpart L, §§ 61.130 through 61.139, which established the NESHAP for Benzene Emissions from Coke By-Product Recovery Plants. 54 Fed. Reg. 38,073 (September 14, 1989). Pursuant to authority granted by §§ 22-28-23 and 22-22A-5 of the Code of Alabama, JCBH incorporated Subpart L into the Jefferson County Board of Health Air Pollution Control Rules and Regulations (the "JCBH Regulations") at § 14.2.11 of the JCBH Regulations.

20.    Pursuant to 40 C.F.R. §§ 61.130(a) & (b), Subpart L applies to specific sources at furnace and foundry coke by-product recovery plants, including tar decanters, tar storage tanks, tar intercepting sumps, flushing-liquor circulation tanks, light oil sumps, light oil condensers, light oil decanters, wash oil decanters, wash-oil circulation tanks, naphthalene processing, final coolers, final cooler cooling towers, benzene storage tanks, BTX storage tanks, light-oil storage tanks and excess ammonia-liquor storage tanks, and to equipment that is intended to operate in benzene service, including pumps, valves, exhausters, pressure relief devices, sampling connection systems, open-ended valves or lines, flanges or other connectors, and control devices or systems required by 40 C.F.R. § 61.135.

21.    40 C.F.R. § 61.131 defines "coke by-product recovery plant" as "any plant designed and operated for the separation and recovery of coal tar derivatives (by-products) evolved from coal during the coking process of a coke oven battery."

22.    40 C.F.R. § 61.131 defines "in benzene service" as "a piece of equipment, other than an exhauster, that either contains or contacts a fluid (liquid or gas) that is at least 10 percent benzene by weight or any exhauster that either contains or contacts a fluid (liquid or gas) at least 1 percent benzene by weight as determined by the provisions of §61.137(b)."

23.     40 C.F.R. § 61.132(a)(1) requires owners or operators of furnace or foundry coke byproduct recovery plants to enclose and seal all openings on each process vessel, tar storage tank, and tar-intercepting sump.

24.     40 C.F.R. § 61.132(a)(2) requires owners or operators of furnace or foundry coke byproduct recovery plants to duct gasses from each process vessel, tar storage tank, and tar intercepting sump to the gas collection system, gas distribution system, or other enclosed point in the by-product recovery process where the benzene in gas will be recovered or destroyed. This system shall be designed and operated for no detectable emissions, as indicated by an instrument reading of less than 500 ppm above background and visual inspections.

25.     Under 40 C.F.R. § 61.132(b), following the installation of any control equipment to come into compliance with 40 C.F.R. § 61.132(a), owners or operators must monitor connections and seals on each control system to determine if it is operating with no detectible emissions, using Method 21, and procedures specified in 40 C.F.R. § 61.245(c), and shall visually inspect each source (including sealing materials) and the ductwork of the control system for evidence of visible defects such as gaps or tears.

26.     Under C.F.R. § 61.132(b)(3)-(4), if a leak is detected, a repair must be attempted within five days of detection and the repair must be made no later than fifteen calendar days after first detected.

8

27.    40 C.F.R. § 61.133(c) requires owners and operators to monitor the connections and seals on each control system for each light oil sump to determine if they are operating with no detectable emissions.

28.    40 C.F.R. § 61.135(c) requires owners and operators to mark all equipment in benzene service subject to the provisions of Subpart L in such a manner that it can be distinguished readily from other pieces of equipment in benzene service.

## II.    NESHAP for Equipment Leaks (Fugitive Emission Sources) –40 C.F.R Part, 61, Subpart V

29.    Pursuant to Sections 112 and 114 of the CAA, EPA promulgated 40 C.F.R. Part 61, Subpart V, §§ 61.240 through 61.247 which established the NESHAP for equipment leaks and fugitive emission sources. 49 Fed. Reg. 23,513 (June 6, 1984). Pursuant to authority granted by §§ 22-28-23 and 22-22A-5 of the Code of Alabama, JCBH incorporated Subpart V into the JCBH Regulations at § 14.2.21 of the JCBH Regulations.

30.    40 C.F.R. § 61.135(a) provides that each owner or operator of equipment in benzene service shall comply with the requirements of 40 C.F.R. 61, Subpart V, except as otherwise provided.

31.    Pursuant to 40 C.F.R. § 61.240, Subpart V applies to each of the following sources that are intended to operate in volatile hazardous air pollutant ("VHAP") service: pumps, compressors, pressure relief devices, sampling connection systems, open-ended valves or lines, valves, connectors, surge control vessels,

bottoms receivers, and control devices or systems required by this subpart. Under 40 C.F.R. § 61.242-1, owners and operators subject to Subpart V shall demonstrate compliance with the requirements set forth in 40 C.F.R. §§ 61.242-1 through 61.242-11 pertaining to equipping the various sources with seals, caps, plugs, vents and other devices to reduce and/or eliminate leaks, to test and monitor those sources for leaks, and to timely repair any leaks exceeding acceptable thresholds.

32.     40 C.F.R. § 61.242-1(d) requires each piece of equipment subject to Subpart V be marked to permit distinguishing it from other non-Subpart V equipment.

33.     40 C.F.R. § 61.242-6(a)(1) requires each open-ended valve or line to be equipped with a cap, blind flange, plug, or second valve.

34.     40 C.F.R. § 61.242-2(a)(1) requires each pump to be monitored monthly to detect leaks according to Method 21. 40 C.F.R. § 61.242-2(a)(2) requires each pump to be visually inspected each calendar week for indications of liquids dripping from the seal.

35.     40 C.F.R. § 61.242-4(a) requires that pressure relief devices be operated with no detectable emissions.

36.     40 C.F.R. § 61.242-7(h)(3) requires valves designated as difficult to monitor, be monitored at least once per year. 40 C.F.R. § 61.245(b)(1) requires owners and operators to comply with Method 21 when testing equipment for leaks. 40 C.F.R Part 60, Appendix A, Method 21.

37.    40 C.F.R. § 61.245(b)(1) requires that monitoring required by Subpart V comply with Method 21 of Appendix A of 40 C.F.R. Part 60, including through correct placement of the probe of the monitoring equipment and correct measurement of background readings of ambient VOC concentrations.

38.    40 C.F.R § 61.246(b)(1) provides that when a leak is detected, "a weatherproof and readily visible identification, marked with the equipment identification number, shall be attached to the leaking equipment."

39.    40 C.F.R. § 61.246(e)(1) requires an operator to keep a list of all components subject to regulation under this subpart.

### III.    NESHAP For Benzene Waste Operations – 40 C.F.R. Part 61, Subpart FF

40.    Pursuant to Sections 112 and 114 of the CAA, 42 U.S.C. §§ 7412, 7414, EPA promulgated 40 C.F.R. Part 61, Subpart FF, §§ 61.340 through 61.359, which established the NESHAP for benzene waste operations, 55 Fed. Reg. 8,346 (March 7, 1990). Pursuant to authority granted by §§ 22-28-23 and 22-22A-5 of the Code of Alabama, JCBH incorporated Subpart FF into the JCBH Regulations at § 14.2.31 of the JCBH Regulations.

41.    40 C.F.R. § 61.340(a) provides that Subpart FF applies to owners or operators of coke by-product recovery plants, among other sources.

42.    40 C.F.R. § 61.355(a) requires owners or operators of a coke by-product recovery plant to determine the total annual benzene ("TAB") quantity from

facility waste. To calculate the TAB quantity, owners and operators must calculate the annual benzene quantity by multiplying the annual waste quantity for each waste stream by the flow-weighted annual average benzene concentration for each waste stream. The annual benzene quantity for each waste stream generated for the year must then be added to the annual benzene quantity for each process unit turnaround waste annualized, to get the TAB quantity. 42. 40 C.F.R. § 61.355(b) provides that, for purposes of calculating the TAB, owners or operators must determine the annual waste quantity at the point of waste generation, by one of the methods enumerated in 40 C.F.R. §§ 61.355(b)(5) though (7), unless otherwise provided.

43.     40 C.F.R. § 61.355(b)(2) provides that, for purposes of calculating the TAB, to permit calculation at the exit of the ammonia still, the transfer of wastes to the still must be through hard piping, or other enclosed system, and the ammonia still must meet the definition of a sour water stripper found in 40 C.F.R. § 61.341.

44.     40 C.F.R. § 61.355(a)(3) provides that if the TAB quantity from facility waste is greater than 10 megagrams ("Mg") per year (11 tons/yr) then the owner or operator shall comply with the requirements of 40 C.F.R. § 61.342(c) – (e).

45.     40 C.F.R. § 61.355(a)(4) provides that if the TAB quantity from facility waste is less than 10 Mg/yr (11 tons/yr) but is equal to or greater than 1 Mg/yr (1.1 tons/yr) then the owner or operator shall comply with the recordkeeping

requirements of § 61.356 and reporting requirements of § 61.357 of Subpart FF and shall repeat the determination of TAB at least once per year and whenever there is a change that will impact the TAB.

46.    40 C.F.R. § 61.355(a)(5) provides that if the TAB quantity from facility waste is less than 1 Mg/yr (1.1 tons/yr) then the owner or operator shall comply with the recordkeeping requirements of 40 C.F.R. § 61.356 and reporting requirements of 40 C.F.R. § 61.357 of Subpart FF and shall repeat the determination of TAB whenever there is a change that will impact the TAB.

47.    40 C.F.R. § 61.357(a)(2) requires that the owner or operator include in his or her report a table identifying each waste stream.

48.    40 C.F.R. § 61.346(a)(1) requires that on each drain system in which waste is placed, the owner or operator shall install, operate, and maintain on each drain system opening a cover and closed-vent system that routes all organic vapors vented from the drain system to a control device.

49.    40 C.F.R. § 61.347(a)(1) requires that on each oil water separator in which waste is placed, the owner or operator shall install, operate, and maintain a fixed roof and closed-vent system that routes all organic vapors vented from the oil-water separator to a control device.

### IV.    Title V Permit

50.    Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), provides that after the effective date of any permit program approved or promulgated pursuant to Title V of the CAA, it shall be unlawful for any person to violate any requirement of a permit issued under Title V of the CAA, or to operate a source except in compliance with a permit issued by a permitting authority under Title V of the CAA.

51.    Section 503(a) of the CAA, 42 U.S.C. § 7661b, provides that any source specified in Section 502(a) of the CAA shall become subject to a permit program and shall be required to have a permit to operate by the relevant date. Section 503(b)(2) of the CAA provides that the regulations promulgated pursuant to Section 502(b) shall include requirements that the permittee periodically, but no less frequently than annually, certify that the facility is in compliance with any applicable requirements of the Title V permit, and promptly report any deviations from permit requirements to the permitting authority.

52.    In accordance with Section 502(d)(1) of the CAA, 42 U.S.C. §7661a(d)(1), the JCBH proposed Title V Operating Permit Program rules (Jefferson County Board of Health Air Pollution Control Rules and Regulations, Chapter 18) to meet the requirements of Title V of the CAA and 40 C.F.R. Part 70. EPA granted interim approval of the JCBH Title V Operating Permit Program on December 15,

14

1995, 60 Fed. Reg. 57,352 (Nov. 15, 1995), and granted full approval of the program on November 28, 2001, 66 Fed. Reg. 54,444 (October 29, 2001).

53.     On December 15, 1995, Drummond submitted a Title V Permit application, which was approved by JCBH. Drummond has renewed its permit continually since then, with a current permit, Number 4-07-0001-03, set to expire August 10, 2019.

54.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes EPA to bring a civil action if the Administrator finds that any person is in violation of, *inter alia*, any requirement or prohibition of an applicable implementation plan or permit issued under the CAA.

55.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the District Court to enjoin a violation, to require compliance, to assess a civil penalty for each violation, and to award any other appropriate relief.

## FACTUAL BACKGROUND

56.     ABC Coke includes a coke by-product recovery plant associated with two coke batteries consisting of a total of 132 coke ovens, operates twenty-four hours per day, seven days per week, 365 days per year.

57.     The plant is the largest merchant producer of foundry coke in the United States and Mexico.

58.     EPA has documented multiple violations and corrective actions brought against ABC Coke over its operating history, including consent decrees, settlement agreements, and/or notices of violation in 1975, 1980, 1988, 1989, 1999, 2004, and 2005, arising from Clean Air Act violations.

59.     Additionally, both ADEM and the EPA have cited this facility multiple times for violations of the Clean Water Act.

60.     The Facility produces coke, a fuel that is stronger than coal, through a destructive distillation process in which coal is heated in ovens. The volatile materials in the heated coal are removed from the ovens as coke oven gas ("COG").  COG is processed to remove desired byproducts and waste materials and then the gas is combusted in boilers to produce steam for the facility and in the coke ovens to heat the coal.

61.     This action pertains to the by-product recovery plant portions of the ABC Coke facility.

62.     The purpose of coke oven by-product recovery plants is to recover by-products such as tar, light oil, and ammonium sulfate for sale as feedstocks to chemical manufacturers.

63.     The Facility is within the "Coke By-Product Plants" category of Major Sources of HAPs, as defined by 42 U.S.C. § 7412(a)(1), and as promulgated by the Administrator pursuant to 42 U.S.C. § 7412(c)(1). 57 F.R. 31576 (July 16, 1992)

("Initial List of Categories of Sources Under Section 112(c)(1) of the Clean Air Act Amendments of 1990").

64.     The Facility is a coke by-product recovery plant as defined in 40 C.F.R. § 61.131, and includes sources subject to Subparts V and L.

65.     For purposes of NESHAP Subpart L, the Facility is a foundry coke by-product recovery plant. 40 C.F.R. § 61.131.

66.     The Facility is a coke by-product recovery plant as defined in NESHAP Subpart FF, 40 C.F.R. § 61.341.

67.     From May 4 to May 10, 2011, the EPA's National Enforcement Investigation Center ("NEIC") and/or EPA Region 4, and JCBH inspected the Plant to determine compliance with the CAA.

68.     On January 10, 2012, the EPA issued a Request For Information ("RFI") to Drummond pursuant to authority granted by Section 114 of the CAA, 42 U.S.C. § 7414.

69.     After a series of extensions, Drummond submitted responses to EPA's RFI between March 8, 2012 and June 19, 2012. The information submitted in Drummond's RFI responses revealed evidence of a number of violations of the CAA regulations.

70.     The EPA and JCDH conducted a follow up inspection in 2014 and found again that Drummond was violating the CAA.

71.     The information and the inspections revealed that the Facility had many benzene leaks and a total annual benzene quantity of 38 Mg/yr because, among other waste streams, the aqueous overflow from the BTX decanter going into the naphthalene sump, and flow from the light oil pad condensate to a dirty water sump, were required to be included in calculation of the TAB. Drummond had not recalculated its TAB since 1990.

72.     On August 14-17, 2018, EPA and JCDH inspected and still found leaks at the Dirty Water sump, the new Naphthalene pump, the pressure relief device on the west light oil tank, and a leak on the emergency PRD on the excess liquor tank.

73.     On September 11, 2018, Gasp sought EPA inspection records related to the ABC Coke Facility under the Freedom of Information Act.

74.     On February 8, 2019, EPA and JCDH filed a complaint in this Court alleging that Drummond was committing multiple and ongoing violations of the Clean Air Act (CAA) and its Title V permit, some of which dated back to 2007. The same day, the parties filed a proposed Consent Decree, purporting to address those violations. This was the first time that this 29 to 12-year history of violations stemming from benzene leaks and benzene reporting violations was publicized by either EPA or JCDH.

*75.*    From February 14, 2019 to July 17, 2019, the comment period required by required by 28 C.F.R. § 50.7 and CAA Section 113(g), 42 U.S.C.§ 7413(g) on the

18

proposed Consent Decree was open for public comment. During this time, Gasp sought answers to questions about the Consent Decree and requested meetings with the agencies. These questions went unanswered and the meeting requests were denied.

76. On July 17, 2019, Gasp submitted extensive comments requesting modification and supplementation of the Consent Decree.

77. On January 14, 2020, EPA filed a motion and memorandum in support of that motion with this Court to enter the Consent Decree. EPA's responses to comments were also first publicized this day as an attachment to the motion. None of Gasp's comments or suggestions, besides two typographical errors and a "non-material correction" were implemented. Doc. 7-1 at 14.

Paragraphs 1 through 77 are realleged and incorporated herein by reference.

## CLAIM ONE

## (NESHAP Subpart L for Benzene Emissions from Coke By-Product Recovery)

78. Until sometime after the May 2011 inspection of the facility, Drummond failed to enclose and seal all openings on two tar decanters and one light oil decanter (a/k/a BTX Tank) in violation of 40 C.F.R. § 61.132(a)(1).

79. On numerous occasions between February 2007 and August 2009, Drummond failed to adequately operate its benzene recovery/destruction control system for no detectable emissions in violation of 40 C.F.R. § 61.132(a)(2).

80.    From at least January 2007 through June 2013, Drummond failed to adequately monitor and visually inspect the connections and seals on each benzene control system required by 40 C.F.R. § 61.132(a), in violation of 40 C.F.R. § 61.132(b).

81.    On numerous occasions between January 2007 and August 2010, and for equipment subject to Subpart L, Drummond failed to make a first attempt at leak repair within five days of the discovery of a leak, nor did it repair those leaks within 15 calendar days of their being detected, in violation of 40 C.F.R. § 61.132(b)(3) and 40 C.F.R. § 61.132(b)(4).

82.    From 2007 through June 2013, Drummond failed to monitor and visually inspect the connections and seals on process equipment control systems in violation of 40 C.F.R. § 61.133(c).

83.    Until at least May 2011, Drummond failed to mark certain equipment in benzene service subject to the requirements of NESHAP Subpart L, in violation of 40 C.F.R. § 61.135(c).

84.    Until at least February 2012, Drummond failed to keep in a readily accessible location detailed schematics, design specifications, and piping and instrumentation diagrams, in violation of 40 C.F.R. §61.138(a)(1).

85.    As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Drummond is liable for the assessment of a civil

penalty of up to the statutory maximum amounts set forth in Paragraph 18 above per day for each violation. Pursuant to § 1.14.1 of the JCBH Regulations, Drummond is liable for a civil penalty of up to $25,000 per day for each violation of the JCBH Regulations.

**CLAIM TWO**

**(NESHAP Subpart V for Equipment Leaks)**

86.     Until at least May 2011, Drummond failed to equip numerous open-ended valves with a cap, blind flange, plug, or second valve in violation of 40 C.F.R. § 61.242-6(a)(1).

87.     Until at least May 2011, certain valves and pressure relief devices had no tags or markings that made them readily distinguishable from other pieces of equipment, in violation of 40 C.F.R. § 61.242-1(d).

88.     On at least three occasions between February 2007 and March 2008, Drummond failed to operate pressure relief devices at the Facility in gas/vapor service with no detectible emissions in violation of 40 C.F.R. § 61.242-4(a).

89.     In 2008, Drummond failed to monitor numerous valves identified as difficult to monitor, once per year, in violation of 40 C.F.R. § 61.242-7(h)(3).

90.     In 2011, Drummond failed to monitor numerous valves identified as difficult to monitor, once per year, in violation of 40 C.F.R. § 61.242-7(h)(3).

91.     From at least 2007 to 2011, Drummond failed to attach weatherproof and readily visible identifications to mark leaking equipment, including leaks identified by NEIC inspectors in May 2011, in violation of 40 C.F.R. § 61.246(b)(1).

92.     At various times from 2007 to 2011, Drummond failed to maintain an accurate list of equipment at the facility subject to Subpart V, in violation of 40 C.F.R. § 61.246(e)(1).

93.     On numerous occasions from 2007 to 2011, Drummond failed to re-monitor for two successive months valves reported as leaking, in violation of 40 C.F.R. § 61.242-7(c)(2).

94.     From 2007 through May 2014, Drummond failed to follow the work practice standards of Method 21 when testing for leaks, in violation of 40 C.F.R. § 61.245(b)(1).

95.     As a result of the above-listed violations and pursuant to Section 113(b) of the CAA 42 U.S.C. § 7413(b), Drummond is liable for the assessment of a civil penalty of up to the statutory maximum amounts set forth in Paragraph 18 above per day for each violation. Pursuant to § 1.14.1 of the JCBH Regulations, Drummond is liable for a civil penalty of up to $25,000 per day for each violation of the JCBH Regulations.

## CLAIM THREE

### (NESHAP Subpart FF for Benzene Waste Operations)

96.     Different reporting and recordkeeping requirements apply depending on whether the Total Annual Benzene (TAB) in the plant's waste exposed to the atmosphere is less than one Megagram per year (Mg/yr) (1.1 tons year), or more than one Mg/yr but less than 10 Mg/yr (11 tons per year), or over 10 Mg/yr (11 tons per year).

97.     If the Plant's waste has less than 1 Mg/yr of Total Annual Benzene then 40 C.F.R. § 61.355(a)(5) provides that the owner or operator shall comply with the recordkeeping requirements of 40 C.F.R. § 61.356 and reporting requirements of 40 C.F.R. § 61.357 of Subpart FF and shall repeat the determination of TAB whenever there is a change that will impact the TAB.

98.     If the TAB from the facility's waste has more than one Mg/yr but less than 10 Mg/yr, then the plant shall comply with the recordkeeping requirements of 40 CFR § 61.356 and reporting requirements of § 61.357 of Subpart FF and shall repeat the determination of TAB at least once per year and whenever there is a change that will impact the TAB.

99.     If the plant's total annual benzene is over 10 Mg/yr, the plant goes from being regulated under 40 C.F.R. § 61.355(a)(3) to being regulated under 40 C.F.R. §§ 61.342 (c), (d), and (e). The second regulation has more stringent reporting

requirements and potentially requires the plant to remove benzene from its waste streams all together.

100.   At all relevant times, Drummond has failed to accurately determine the annual waste quantity at the point of generation of each waste stream using one of the methods designated in 40 C.F.R. § 61.355(b)(5), in violation of 40 C.F.R. § 61.355(b).

101.   At all relevant times, Drummond has failed to report all of its benzene waste streams in its TAB (Total Annual Benzene) reports, in violation of 40 CFR § 61.355(a).

102.   At all relevant times, Drummond has failed to submit TAB reports that included all of the information required under 40 C.F.R. § 61.357(a)(1) through (3).

103.   From at least May 2011 to June 2011, Drummond failed to hard pipe or otherwise enclose all waste streams, in violation of 40 C.F.R. § 61.355(b)(2)(i).

104.   From at least May 2011 until May 2014, Drummond has used an ammonia still that does not meet the definition of a sour water stripper in 40 C.F.R. § 61.341.

105.   Since at least May 2011, Drummond has failed to enclose all openings of certain individual drain systems, in violation of 40 C.F.R. § 61.346(a)(1).

106.   Since at least May 2011, Drummond has failed to correctly operate and monitor certain individual drain systems, in violation of 40 C.F.R. § 61.346(a)(2).

107.   From at least May 2011 until May 2014, Drummond has failed to enclose all openings of each oil-water separator in which waste is placed, in violation of 40 C.F.R. § 61.347(a)(1).

108.   Since at least May 2011, Drummond has failed to correctly operate and monitor each oil-water separator in which waste is placed, in violation of 40 C.F.R. § 61.347(a)(2).

109.   Unless restrained by an Order of the Court, certain of these violations of the Clean Air Act and its implementing regulations will continue.

110.   As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Drummond is liable for injunctive relief and the assessment of a civil penalty of up to the statutory maximum amounts set forth in Paragraph 18 above per day for each violation. Pursuant to § 1.14.1 of the JCBH Regulations, Drummond is liable for a civil penalty of up to $25,000 per day for each violation of the JCBH Regulations.

## CLAIM FOUR

### (Title V Permit)

111.   Drummond's Title V Permit requires it to comply with 40 C.F.R. Part 61, Subparts L, V, and FF. As alleged above, Drummond failed to comply with these Subparts. Each such violation constitutes a separate violation of its Title V permit and a violation of Section 502(a) of the Act, 42 U.S.C. § 7661a(a).

112.   Drummond has continuously violated its Title V Permit conditions for Emissions Unit 005 (Coke by-Products Plant), by failing to annually submit to JCDH information required to support a compliance determination with Subpart FF.

113.   Unless restrained by an Order of the Court, these violations of the Clean Air Act and its implementing regulations will continue.

114.   As a result of the above-listed violations and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Drummond is liable for injunctive relief and the assessment of a civil penalty of up to the statutory maximum amounts set forth in Paragraph 18 above per day for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Gasp respectfully requests that this Court enter judgment against Drummond as follows:

1.   Declaring Drummond in violation of the CAA.

2.   Ordering Drummond to cease violating the CAA.

3.   Ordering Drummond to pay civil penalties commensurate with the severity of its violations, through a Consent Decree or otherwise.

4.   Ordering Drummond to take all necessary steps to study, catalog, understand, prevent, and remediate the harms caused by its CAA violations, through a Consent Decree or otherwise.

26

5.      Declaring that the proposed Consent Decree is inadequate and should

be rejected and/or strengthened to better achieve the purposes and

goals of the Clean Air Act and the Title V permit.

6.      Set a hearing to receive evidence and arguments regarding the

adequacy and efficacy of the Consent Decree.

7.      Awarding such other relief as the Court deems just and proper.

Respectfully submitted this the 1st day of September, 2020.

**s/ Sarah Stokes**
Sarah Stokes (ASB-1385-A55S)
Barry Brock (ASB-9137-B61B)
Southern Environmental Law Center
2829 Second Avenue S., Ste. 282
Birmingham, AL 35233
tel: (205) 745-3060
fax: (205) 745-3064
sstokes@selcal.org
bbrock@selcal.org

*Attorneys for Intervenor Gasp*

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2020, I served the foregoing *Complaint in Intervention* with the Clerk of the Court using the CM/ECF system, which will serve notification of such filing to the parties below:

Andrew W. Ingersoll
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice 601
D Street NW Washington, DC
20004
(202) 514-1999
*andrew.ingersoll@usdoj.gov*

Robert W Caplan
U.S. Environmental Protection Agency,
Region 4
61 Forsyth Street
Atlanta, GA 30338
(404) 562-9520
*caplan.robert@epa.gov*

and by U.S. Mail to:
Ellen M. Mahan
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611

*Attorneys for Plaintiff United States of America*

David S. Maxey
Wade C. Merritt
SPAIN & GILLON LLC
2117 Second Avenue North
Birmingham, AL 35203
*dsm@spain-gillon.com*
*wcm@spain-gillon.com*

*Attorneys for Plaintiff Jefferson County Board of Health*

Richard E. Davis
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, Alabama 35209
(205) 868-6000
(205) 868-6099
*red@starneslaw.com*

Robert B. McKinstry, Jr.
Romeade Farm
548 School House Road
Kennett Square, Pennsylvania 19348
Telephone: (484) 467-3207
*bobby@robertbmckinstryjr.com*

*Attorneys for Defendant Drummond Company Inc., d/b/a ABC Coke*

This the 1st day of September, 2020.

**s/ Sarah Stokes**